1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**SOUTHERN DISTRICT OF CALIFORNIA**

10
11

MARIO LEDESMA, an individual, RUTH LEDESMA, an individual, RUTH FLORES, an individual,

12
13

Plaintiffs,

vs.

14
15

FCM CORPORATION, WILMINGTON FINANCE, WILSHIRE CREDIT CORP., and T.D. SERVICE COMPANY,

16
17

Defendants.

CASE NO. 09 CV 1837 JM (AJB)

**ORDER GRANTING DEFENDANT WILMINGTON FINANCE, INC.'S MOTION FOR SUMMARY JUDGMENT**

Doc. No. 19

18
19
20
21
22
23
24

Plaintiffs Mario Ledesma, Ruth Ledesma, and Ruth Flores (collectively, "Plaintiffs") brought this action for claims arising from a residential mortgage transaction. (Doc. No. 1). Defendant Wilmington Finance, Inc. ("Wilmington") now moves for summary judgment on all of Plaintiffs' nineteen claims. (Doc. No. 19). The court finds this matter appropriate for disposition without oral argument. *See* CivLR 7.1(d)(1). For the following reasons, the court hereby GRANTS Wilmington's motion for summary judgment.

25

**I.    BACKGROUND**

26
27
28

On or about October 13, 2006, Plaintiffs purchased a home by obtaining two loans from Defendant FCM Corporation totaling $560,000.  (Doc. No. 4, First Amended Complaint, hereinafter "FAC," ¶ 9; Doc. No. 19, Ex. 2, Statement of Uncontested Facts, hereinafter

1  "SUF," ¶ 4).  On or about October 27, 2006, Wilmington—who was not involved in the loan

2  origination and did not negotiate the terms of the loan with Plaintiffs—purchased Plaintiffs'

3  loans from FCM Corporation.  (SUF ¶ 17).  On or about November 29, 2006, Wilmington sold

4  Plaintiffs' loans to two separate investors.  (SUF ¶ 25).  At all relevant times, Wilmington was

5  a registered mortgage banker in California.  (SUF ¶ 2).

6  **II.   LEGAL STANDARD**

7  Summary judgment is appropriate when "there is no genuine issue of material fact and

8  . . . the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The court

9  must examine the evidence in the light most favorable to the non-moving party.  *United States*

10  *v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).  If the moving party, however, "meets its initial

11  burden of identifying for the court the portions of the materials on file that it believes

12  demonstrate the absence of any genuine issue of material fact, the nonmoving party may not

13  rely on the mere allegations in the pleadings in order to preclude summary judgment." *Nilsson,*

14  *Robbins, Dalgarn, Berlines, Carson & Wurst v. La. Hydrolec*, 854 F.2d 1538, 1542 (9th Cir.

15  1988) (citing *T.W. Elec. Servs. v. Pacific Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir.

16  1987)).

17  **III.   DISCUSSION**

18  **A.     Plaintiffs' Rule 56(f) Motion for Continuance**

19  In their opposition, filed as a declaration by defense counsel, Plaintiffs argue that

20  summary judgment is premature at this early stage of litigation, before either party has

21  conducted discovery, and that the court should therefore continue the motion.  (Doc. No. 29).

22  Specifically, defense counsel declares that,

23       because discovery has not been conducted, and the requisite disclosures have not
         been made by the parties, Plaintiffs are prevented from providing the necessary
24       affidavits or depositions that would show that Wilmington's role with respect
         to the subject loans was not limited, and that Wilmington does not qualify as a
25       "holder in due course" as argued in the moving papers.

26  (Doc. No. 29 ¶ 4).

27  "If a party opposing [a motion for summary judgment] shows by affidavit that, for

28  specified reasons, it cannot present facts essential to justify its opposition, the court may . . .

1   order a continuance to enable affidavits to be obtained, depositions to be taken, or other

2   discovery to be undertaken."   Fed. R. Civ. P. 56(f).   To receive relief under Rule 56(f),

3   Plaintiffs "must show (1) that they have set forth in affidavit form the specific facts that they

4   hope to elicit from further discovery, (2) that the facts sought exist, and (3) that these sought-

5   after facts are 'essential' to resist the summary judgment motion."   *State of Cal. ex rel. Cal.*

6   *Dep't of Toxic Substances Control v. Campbell*, 138 F.3d 772, 779 (9th Cir. 1998).

7        Defense counsel's declaration does not meet the standard for relief under Rule 56(f).

8   A general reference to the need for discovery is not enough, Plaintiffs must set "forth the

9   particular facts expected from further discovery."   *Id.*   Moreover, Wilmington has provided

10  compelling evidence that the facts Plaintiffs would seek—evidence that Wilmington was more

11  than a "holder in due course"—simply do not exist.   Plaintiffs' claims stem from two time

12  periods: loan origination on or about October 13, 2006 and foreclosure in July or August of

13  2009.  (Doc. No. 1).  Wilmington provides documentation that it purchased the loan from co-

14  defendant FCM Corporation on October 27, 2006 and sold the loan on November 29, 2006.

15  (Kelly Decl. ¶¶ 14, 33).  Based on this undisputed evidence, there is no reason to believe that

16  Wilmington had anything to do with either loan origination or foreclosure, or that any facts

17  Plaintiffs might seek in this regard actually exist.   *Cf. Terrell v. Brewer*, 935 F.2d 1015, 1018

18  (9th Cir. 1991) ("Denial of a Rule 56(f) application is proper where it is clear that the evidence

19  sought is almost certainly nonexistent or is the object of pure speculation.").

20       As Plaintiffs have failed to carry their burden for relief under Rule 56(f), the court

21  denies their request for further discovery and will rule on Wilmington's motion for summary

22  judgment.  *See Brae Transp., Inc. v. Coopers & Lybrand*, 790 F.2d 1439, 1443 (9th Cir. 1986)

23  ("Failure to comply with the requirements of Rule 56(f) is a proper ground for denying

24  discovery and proceeding to summary judgment.").

25       **B.    Plaintiffs' Claims Arising During Loan Origination**

26       Plaintiffs' first claim is for intentional misrepresentation.   Plaintiffs claim that

27  "Defendants defrauded Plaintiffs by concealing or suppressing" material facts during the loan

28  origination process.  (FAC ¶ 26).  Under California law, the elements of fraud are false

representation, knowledge of its falsity, intent to defraud, justifiable reliance, and damages. *See Bank of the West v. Valley Nat'l Bank of Ariz.*, 41 F.3d 471, 477 (9th Cir. 1994) (citation and quotation marks omitted). Because Wilmington was not involved in the loan origination, however, Wilmington could not have made a false representation to Plaintiffs. Therefore, Plaintiffs' first claim for intentional misrepresentation fails as a matter of law.

Plaintiffs' second claim is for breach of fiduciary duty. Plaintiffs claim that Wilmington had a fiduciary duty to Plaintiffs that they breached by failing to advise "Plaintiffs that they were being placed into a loan they knew or should have known they could not afford." (FAC ¶ 34). "[A]s a general rule, [however], a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Nymark v. Heart Fed. Savings & Loan Assn.,* 231 Cal. App.3d 1089, 1096 (Ct. App. 1991). The evidence before the court demonstrates that Wilmington was not even the lender involved in Plaintiffs' loan transaction, much less a lender that exceeded its conventional role. Therefore, Wilmington owed no fiduciary duty to Plaintiffs, and Plaintiffs third claim for breach of fiduciary duty fails.

Plaintiffs' third claim is for constructive fraud. Plaintiffs claim that by "breaching their fiduciary duties to Plaintiffs" and engaging in "fraudulent concealment and suppression of material facts," Defendants "committed constructive fraud." (FAC ¶ 41). As already explained, however, Wilmington had no fiduciary duty to Plaintiffs and could not have engaged in the alleged fraud because Wilmington was not involved in the loan origination. Therefore, Plaintiffs' claim for constructive fraud fails as a matter of law.

Plaintiffs' fourth claim is for breach of the covenant of good faith and fair dealing. Plaintiffs claim that Wilmington breach the implied covenant of good faith and fair dealing by "purposely overstating Plaintiffs' income and failing to disclose material information in the loan application process." (FAC ¶ 47). Wilmington, however, was not involved in the loan application process. Indeed, Wilmington did not enter a contract with Plaintiffs. Therefore, Wilmington was not a party to a covenant of good faith and fair dealing with Plaintiffs, and Plaintiffs' fourth claim fails.

Plaintiffs' seventh claim is for violation of the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691(d)(6).  Plaintiffs claim that "in the course and conduct of making the mortgage to Plaintiff [sic], Defendants discriminated against Plaintiffs on the basis of race, color, religion, national origin, sex, marital status, age, receipt of public assistance or because Plaintiffs have exercised any of her [sic] rights as detailed in the Equal Credit Opportunity Act."  (FAC ¶ 61).  To begin, Wilmington cannot be liable under this claim because Wilmington was not involved "in the course and conduct of making the mortgage to Plaintiffs."  Moreover, ECOA claims are subject to a two-year statute of limitations.  15 U.S.C. § 1691e(f).  Plaintiffs' mortgage loan transaction occurred in October 2006, but Plaintiffs did not file suit until nearly three years later in August 2009.  Therefore, Plaintiffs' ECOA claim is also time-barred.

Plaintiffs' eighth claim is for violation of California Financial Code section 4970 *et seq*. Plaintiffs claim that Defendants' conduct "was in violation of California's predatory lending laws."  (FAC ¶ 67).  California's predatory lending laws, however, relate to loan origination. *See* Cal. Fin. Code § 4973.  Because Wilmington was not involved in loan origination, and only held the loan for a limited amount of time, Plaintiffs' claim fails.

Plaintiffs' ninth claim is for negligence.  Plaintiffs claim "Defendants . . . owed a duty of due care to the Plaintiffs.  Such duty was breached by negligently placing Plaintiffs in the above described loans."  (FAC ¶ 72).  Plaintiffs' negligence claim also fails as a matter of law. First, Wilmington did not place Plaintiffs "in the above described loans."  Second, as already explained, even if Wilmington were involved in loan origination, it would owe no duty of care to Plaintiffs.  *See Nymark v. Heart Fed. Savings & Loan Assn.,* 231 Cal. App.3d 1089, 1096 (Ct. App. 1991).

Plaintiffs' twelfth claim is for violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, and the Home Ownership and Equity Protection Act of 1994 ("HOEPA").  Plaintiffs claim that "in the course and conduct of offering and making the HOEPA mortgage loan to Plaintiffs, Defendants violated the requirements of HOEPA and Regulation Z by failing to make required disclosures."  (FAC ¶ 93).  Because Wilmington was

1  not involved in the "course and conduct of offering and making the HOEPA loan to Plaintiffs,"

2  this claim must fail.  In addition, TILA has a one-year statute of limitations on action for

3  damages.  15 U.S.C. § 1640(e).  Therefore, Plaintiffs' claim is also time-barred.

4       Plaintiffs' thirteenth claim is for violations of the Real Estate Settlement Procedures Act

5  ("RESPA"), 12 U.S.C. § 2601 *et seq.*  Plaintiffs claim that "in the course and conduct of

6  offering and making the RESPA mortgage loan to Plaintiffs, Defendants violated the

7  requirement of RESPA by failing to disclose" various information related to the loan.  (FAC

8  ¶ 102).  In addition, Plaintiffs claim that Defendants provided kickbacks and fee splits in

9  violation of RESPA.  (FAC ¶ 103).  Once again, Wilmington cannot be liable for this claim

10 because it arises from loan origination, in which Wilmington was not involved.  Moreover,

11 RESPA has a one year statute of limitations.  12 U.S.C. § 2614.  Plaintiffs' RESPA claim

12 matured in October 2006, when Plaintiffs received the loan.  Because Plaintiffs did not file suit

13 until nearly three years later, their RESPA claim is time-barred.

14      Plaintiffs' fourteenth claim is for violation of the Fair Credit Reporting Act ("FCRA"),

15 15 U.S.C. § 1681 *et seq.*  Plaintiffs claim that  "in the course and conduct of offering and

16 making the above-noted mortgage loan to Plaintiffs, Defendants violated numerous provisions

17 of FCRA" by failing to provide various notices.  (FAC ¶ 110).  Because Wilmington was not

18 engaged "in the course and conduct of offering and making the above-noted mortgage loan to

19 Plaintiffs," however, Wilmington is not liable for any failures to provide FCRA-required

20 notices.  Therefore, Plaintiffs' fourteenth claim against Wilmington fails.

21      Plaintiffs' nineteenth claim is for violation of California Civil Code section 1632(b).

22 Plaintiffs claim that the loan was negotiated in Spanish, but all of the loan documents were

23 provided in English.  California Civil Code § 1632(b) provides that:

24     Any person engaged in a trade or business who negotiates primarily in Spanish,
   Chinese, Tagalog, Vietnamese, or Korean, orally or in writing, in the course of
25     entering into [certain agreements], shall deliver to the other party to the contract
   or agreement and prior to the execution thereof, a translation of the contract or
26     agreement in the language in which the contract or agreement was negotiated.

27 Generally, the California provision excludes loans secured by real property.  See Cal. Civ.

28 Code § 1632(b)(2).  However, § 1632(b)(4) states that notwithstanding the exclusion of loans

secured by real property, the statute does apply to "a loan or extension of credit for use primarily for personal, family or household purposes where the loan or extension of credit is subject to the provision of Article 7 (commencing with Section 10240) of Chapter 3 of Part I of Division 4 of the Business and Professions Code."  The cited section of the California Business and Professions Code, in turn, applies to certain loans secured by real property which are negotiated by a real estate broker.  See Cal. Bus. & Prof. Code § 10240.  Nonetheless, Wilmington was not involved in the negotiation of Plaintiffs' loan, therefore Wilmington did not negotiate with Plaintiffs in Spanish and Plaintiffs' nineteenth claim fails.

## C.    Plaintiffs' Claims Arising During Foreclosure

Plaintiffs' fifth claim is for declaratory relief.  Specifically, Plaintiffs seek judicial determination of the "respective rights and duties pertaining to the subject property and the described transactions."  (FAC ¶ 51).  The evidence before the court shows that Wilmington has no rights or duties pertaining to the subject property.  Indeed, Wilmington currently has no interest in the loans or subject property.  (Kelly Decl. ¶ 34).  Moreover, the "described transactions" do not include the purchase and resale of the loans by Wilmington.  Therefore, Wilmington is not a proper party to Plaintiffs' declaratory relief claim.

Plaintiffs' sixth claim for relief is an action to quiet title.  Plaintiffs claim that "[t]he deeds of trust are invalid and void as to Plaintiffs' property because Plaintiffs have rescinded the loan agreements, the loan modification, the note and the deeds of trust with Defendants, as applicable."  (FAC ¶ 57).  This rescission, however, does not apply to Wilmington, which does not hold the note or deeds of trust, and has no interest in the subject property.  Therefore, Plaintiffs' quiet title action against Wilmington fails.

Plaintiffs' eleventh claim is for an accounting.  Plaintiffs claim that "[t]he amount of money due, if any, from Plaintiffs to Defendants is unknown to Plaintiffs and cannot be determined without an accounting."  (FAC ¶ 84).  Because Wilmington has no current interest in the loans, and sold any interest it had over three years ago, however, Plaintiffs do not owe any money to Wilmington.  Therefore, an accounting action against Wilmington is not warranted.

Plaintiffs' fifteenth claim is for slander of title.  Plaintiffs claim that "Defendants communicated to a third party a false statement that was derogatory to the Plaintiffs' title" by recording "document with the San Diego County Recorder's Office which contain false statements and representations."  (FAC ¶¶ 114, 115).  By the time any Defendant filed documents in connection with the foreclosure with the San Diego County Recorder's Office, however, Wilmington had no interest in Plaintiffs' property.  Wilmington, therefore, did not file anything slanderous regarding Plaintiffs' title.  Plaintiffs' slander of title claim against Wilmington fails.

Plaintiffs' seventeenth claim (mislabeled the sixteenth claim) is for violation of California Civil Code section 2923.6.  Plaintiffs claim that "at no time during the course of the foreclosure process, nor any time leading up thereto, was an attempt at a loan modification made by Defendants."  (FAC ¶ 122).  Because Wilmington was not involved in the foreclosure process, its interest in the loan long since sold, Wilmington is not liable for any failure to modify Plaintiffs' loan under section 2923.6.

Plaintiffs' eighteenth claim (mislabeled the seventeenth claim) is for violation of California Civil Code section 2923.5.  Plaintiffs claim that "Defendants failed to assess Plaintiff's [sic] financial situation and explore options for Plaintiffs to avoid foreclosure, thirty (30) days prior to the Default" as required by section 2923.5.  (FAC ¶ 127).  As Wilmington was not involved in the foreclosure process and had no interest in the loan during that time period, however, Wilmington is not liable for any alleged violation of section 2923.5.

## D.    Plaintiffs' Other Claims

Plaintiffs' tenth claim is for usury.  Plaintiffs claim that 'the annual interest rate on the loan is usurious and in violation of section 1(1) [or 1(2)] of article XV of the California Constitution." (FAC ¶ 77). Section 1(1) does not apply to loans "which are used primarily for the purchase, construction or improvement of real property."  Cal. Const. art. XV, sec. 1(1). Because Plaintiffs used the loan to purchase real property, section 1(1) does not apply.  In addition, Wilmington, as a registered mortgage banker, is exempt from article XV.  *See* Cal. Fin. Code §§ 50000-50005.  Therefore, Plaintiffs' tenth claim fails.

Plaintiffs' sixteenth claim is for violation of California Business and Professions Code section 17200 *et seq*. Plaintiffs claim that Wilmington violated this section "by consummating unlawful, unfair and fraudulent business practice, designed to deprive Plaintiffs of their equity in said property." (FAC ¶ 119). Section 17200 claims are derivative of other unlawful acts. *See Johnson v. JP Morgan Chase Bank*, 536 F. Supp. 2d 1207, 1213 (E.D. Cal. 2008). Because the rest of Plaintiffs' claims fail, their section 17200 claim must also fail.

**IV.    CONCLUSION**

For the foregoing reasons, the court hereby GRANTS Defendant Wilmington Finance, Inc.'s motion for summary judgment on all claims.

**IT IS SO ORDERED.**

DATED:  March 3, 2010

Hon. Jeffrey T. Miller
United States District Judge