1

2

3

4

5

6

7

8

**UNITED STATES DISTRICT COURT**

9

**SOUTHERN DISTRICT OF CALIFORNIA**

10

11 | MARIO LEDESMA, an individual;        CASE NO. 09-CV-1837-JM (MDD)

RUTH LEDESMA, an individual; and

12 | LAURA FLORES, an individual,          **ORDER GRANTING**

**DEFENDANT WILSHIRE**

13 |               Plaintiffs,       **CREDIT CORPORATION'S**

**MOTION FOR SUMMARY**

14 |      v.                             **JUDGMENT**

15 | FCM CORPORATION; WILMINGTON     Doc. No. 86

FINANCE; WILSHIRE CREDIT

16 | CORPORATION; T.D. SERVICE

COMPANY; and U.S. BANK

17 | NATIONAL ASSOCIATION,

18 |                Defendants.

19        Plaintiffs Mario Ledesma, Ruth Ledesma, and Laura Flores (collectively, "Plaintiffs")

20 brought this action for claims arising from a residential mortgage transaction. (Doc. No. 1.)

21 Defendant Wilshire Credit Corporation ("Wilshire") now moves for summary judgment on the

22 sole remaining claim against it. (Doc. No. 86.) Pursuant to CivLR 7.1(d)(1), the court finds this

23 matter appropriate for disposition without oral argument. For the reasons set forth below, the

24 court GRANTS Wilshire's motion for summary judgment.

25 **I.**     **BACKGROUND**

26        On or about October 13, 2006, Plaintiffs purchased a single-family home located in San

27 Marcos, California by obtaining two loans from Defendant FCM Corporation ("FCM") totaling

28 $560,000 and secured by two deeds of trust on the purchased property. (Doc. No. 54, Third

Amended Complaint, hereafter "TAC," ¶ 6.) Shortly thereafter, Defendant Wilmington Finance ("Wilmington") purchased Plaintiffs' loans from FCM. (Id. ¶ 7.) In November of 2006, Wilshire, acting as an agent for Defendant U.S. Bank National Association ("U.S. Bank"), purchased the loans from Wilmington. (Id.) Wilshire subsequently continued to service Plaintiffs' loans. (Id. ¶ 8.) After Plaintiffs began experiencing difficulty making their loan payments, a Notice of Trustee's Sale was executed indicating that their home would be sold at a foreclosure sale on or about April 4, 2010. (Id. ¶ 17.)

Plaintiffs claim that, prior to the foreclosure, they sent a Qualified Written Request ("QWR") to Wilshire through their counsel on or around August 6, 2009 requesting certain information, including whether their loans were in compliance with applicable federal and state laws, the identity of the holders of the notes secured by the deeds of trust, and a calculation of the principal and interest on the loans. (Id. ¶ 65.) According to Plaintiffs, the response from Wilshire "did not fully provide the requested information." (Id. ¶ 66.) As a result of Wilshire's failure to disclose all of the information sought, Plaintiffs claim they have suffered actual damages, "including, but not limited to":

> (1) severe mental anguish, emotional distress, inconvenience, and worries that they will lose their home; (2) severe mental anguish, emotional distress, inconvenience, and worries that their mortgage transactions with Defendants were and are in violation of federal and state laws; (3) emotional and mental distress, frustration, and humiliation; (4) Plaintiffs have spent considerable time and money attempting to resolve the problems with their mortgage and to discover the information sought from Defendants in the QWR, preparing correspondences, expenses for preparing, photocopying and requiring certified copies of correspondence; (5) Plaintiffs' [sic] have paid late fees; (6) Plaintiffs have paid out of pocket expenses; (7) mental anguish that Plaintiffs' [sic] are ultimately facing foreclosure of their home; (8) Plaintiffs do not have the ability to prove their case because of Defendants [sic] failure to disclose and provide the requested information to Plaintiffs; (9) Plaintiffs have incurred legal fees; (10) Plaintiffs do not have the ability to determine whether they have incurred further possible damages, such as prohibited fees or rate increases, or the crediting of Plaintiffs' payments to improper accounts; (11) Plaintiffs' [sic] do not have knowledge of, or the access to crucial information (Plaintiffs do not have the requested information including, but not limited to, the current party(ies) claiming a beneficial interest in the note, the identity of all holders of the note secured by the deed of trust, the calculation of the principal and interest, information on the appointment of the trustee and all substitute trustees, documentation of all assignments, transfers or sale of the note, copies of all checks or other evidence of payments made by the Plaintiffs, all debits and credits to the Plaintiffs' accounts, documentation of all mortgage assignments and an accounting of all attorney fees, costs).

1    (Id. ¶ 68.)

2        Following multiple rounds of motions to dismiss, Plaintiffs' only remaining claim

3    against Wilshire is their allegation that Wilshire violated the Real Estate Settlement Procedures

4    Act ("RESPA") by failing to properly respond to their QWR. (See Doc. No. 63.) Wilshire now

5    moves for summary judgment on this claim. (Doc. No. 86.) The motion is unopposed.

6    **II.   LEGAL STANDARD**

7        A motion for summary judgment shall be granted where "there is no genuine issue as

8    to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED.

9    R. CIV. P. 56(c); Prison Legal News v. Lehman, 397 F.3d 692, 698 (9th Cir. 2005). The

10   moving party bears the initial burden of informing the court of the basis for its motion and

11   identifying those portions of the file that it believes demonstrate the absence of a genuine issue

12   of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). There is "no express or

13   implied requirement in Rule 56 that the moving party support its motion with affidavits or

14   other similar materials negating the opponent's claim." Id. (emphasis in original). The

15   opposing party cannot rest on the mere allegations or denials of a pleading, but must "go

16   beyond the pleadings and by [the party's] own affidavits, or by the 'depositions, answers to

17   interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine

18   issue for trial.'" Id. at 324 (citation omitted). The opposing party also may not rely solely on

19   conclusory allegations unsupported by factual data. Taylor v. List, 880 F.2d 1040, 1045 (9th

20   Cir. 1989).

21       The court must examine the evidence in the light most favorable to the non-moving

22   party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Any doubt as to the existence

23   of any issue of material fact requires denial of the motion. Anderson v. Liberty Lobby, Inc.,

24   477 U.S. 242, 255 (1986). On a motion for summary judgment, when "'the moving party bears

25   the burden of proof at trial, it must come forward with evidence which would entitle it to a

26   directed verdict if the evidence were uncontroverted at trial.'" Houghton v. South, 965 F.2d

27   1532, 1536 (9th Cir. 1992) (emphasis in original) (quoting Int'l Shortstop, Inc. v. Rally's, Inc.,

28   939 F.2d 1257, 1264-65 (5th Cir. 1991), cert. denied, 502 U.S. 1059 (1992)).

## III.   DISCUSSION

According to the undisputed evidence, Wilshire served each plaintiff with an identical set of Requests for Admission ("RFA") on or around December 22, 2010. (Doc. No. 86-1.) Each RFA stated the following:

> 1.   Admit that Responding Party did not send a qualified written request under 12 U.S.C. section 2605 to Propounding Party.

> 2.   Admit that Responding Party did not send a letter to Propounding Party that contained a statement of the reasons for Responding Party's belief that the account was in error.

> 3.   Admit that Propounding Party's response to any qualified written request complied with 12 U.S.C. section 2605(e).

> 4.   Admit that Responding Party has suffered no actual damages as a result of any failure by Propounding Party to respond to a qualified written request under 12 U.S.C. section 2605.

(Id. at Exhs. 1-3.) To date, Plaintiffs have not responded to the RFAs. (Id. ¶¶ 5, 8-9.)

Under FED. R. CIV. P. 36(a)(3), a matter is deemed admitted where a party to whom an RFA is directed fails to serve a written answer or objection to the RFA within 30 days. The matter is then "conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." FED. R. CIV. P. 36(b). Such admissions "may be relied on as the basis for granting summary judgment." Conlon v. United States, 474 F.3d 616, 621 (9th Cir. 2007). Therefore, for purposes of this motion, Plaintiffs have admitted (1) that they never sent a QWR or any other letter that might qualify as such to Wilshire; (2) that any response from Wilshire was compliant with the requirements of RESPA; and (3) that Plaintiffs suffered no actual damages from any perceived failure by Wilshire to adequately respond to a written request. Given these facts, Plaintiffs have failed to make out a claim of a RESPA violation against Wilshire. The court therefore grants summary judgment in favor of Wilshire with regard to Plaintiffs' fourth cause of action.

//

//

//

//

**IV.    CONCLUSION**

For the foregoing reasons, the court hereby GRANTS Defendant Wilshire Credit Corporation's motion for summary judgment on Plaintiffs' RESPA claim. (Doc. No. 86.) There are no remaining claims against Wilshire in this action.

**IT IS SO ORDERED.**

DATED:  June 27, 2011

_____
Hon. Jeffrey T. Miller
United States District Judge